**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DELPHINE UWIMBABAZI, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-04231 |
| | § | |
| ALEJANDRO MAYORKAS, | § | |
| SECRETARY OF HOMELAND | § | |
| SECURITY, et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

JIMMY A. RODRIGUEZ
Attorney in Charge
Assistant United States Attorney
Texas Bar No. 24037378
Federal ID No. 572175
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
Jimmy.Rodriguez2@usdoj.gov

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................... iii

I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................. 1

II.  STATEMENT OF THE ISSUES ............................................................................ 2

III. STATEMENT OF FACTS ..................................................................................... 2

    A.  The Asylum Process ...................................................................................... 2

    B.  Asylum Scheduling and Backlog Management ............................................. 3

    C.  Current Backlog of Applications ................................................................... 5

    D.  Recent Developments .................................................................................... 8

    E.  Plaintiff's Asylum Application ...................................................................... 9

IV.  NATURE AND STAGE OF THE PROCEEDINGS .............................................. 9

V.   STANDARD OF REVIEW ................................................................................. 10

    A.  12(b)(1) Motion to Dismiss ......................................................................... 10

    B.  12(b)(6) Motion to Dismiss ......................................................................... 10

    C.  Rule 56(c) Motion for Summary Judgment ................................................. 10

VI.  ARGUMENT ..................................................................................................... 11

    A.  This Court Lacks Subject Matter Jurisdiction to Review Plaintiff's APA and Mandamus Claims ..................................................................................... 11

    B.  Plaintiff Fails to Allege Sufficient Facts to Support His Mandamus Act Claim ........ 14

    C.  Plaintiff Fails to Allege Sufficient Facts to Support His APA Claim ........................ 15

    D.  The Delay in the Adjudication of Plaintiff's Application is Not Unreasonable ........ 18

VII. CONCLUSION ................................................................................................... 20

CERTIFICATE OF SERVICE ..................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Ahmed v. Bitter*, Civil Action No. 4:22-cv-02474, 2024 WL 1340255 (S.D. Tex. Mar. 28, 2024)
.................................................................................................................................9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................9, 14, 15

*Ayana v. Jaddou*, CV H-23-2937, 2023 WL 8936700 (S.D. Tex. Dec. 27, 2023).......1, 12, 13, 19

*Ayvali v. United States*, No. 1:23-CV-896-RP, 2024 U.S. Dist. LEXIS 54712 (W.D. Tex. Mar.
27, 2024)....................................................................................................1, 10, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................9, 14, 17

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ..................................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................10

*Council of and for the Blind of Delaware County Valley v. Regan*, 709 F.2d 1521 (D.C. Cir. 1993)...13

*De Oliveira v. Barr*, No. 19-CV-1508 (ENV) 2020 U.S. Dist. LEXIS 71025 (E.D.N.Y. Apr. 22,
2020) ........................................................................................................................16

*Fort Worth Nat'l Corp. v. Fed. Sav. Loan Corp.*, 469 F.2d 47 (5th Cir. 1972)................................11

*Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 U.S. Dist. LEXIS 47623
(D.D.C. Mar. 19, 2020) .........................................................................................16

*Heckler v. Chaney*, 470 U.S. 821 (1985)..........................................................................10

*Heckler v. Ringer*, 466 U.S. 602 (1984) .........................................................................13

*In re Barr Laboratories*, 930 F. 2d 72 (D.C. Cir. 1991).............................................. 15, 18

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)........................................9

*INS v. Miranda*, 459 U.S. 14 (1982) ..............................................................................16

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986) ....................................10

*Jones v. Alexander*, 609 F.2d 778 (5th Cir. 1980) .........................................................13

*Kizilyildirim, v. Daum et. al*, No. 4:23-CV-03287, 2024 WL 1722277 (S.D. Tex. Mar. 29, 2024)
.............................................................................................................1, 12, 13, 19

*Kolluri v. USCIS*, Civil Action, No. 3:20-CV-02897-N, 2021 U.S. Dist. LEXIS 9004 (N.D. Tex. Jan. 17, 2021) ...................................................................................................16

*Lajin v. Radel*, No. 19cv52-MMA (BLM), 2019 WL 3388363 (S.D. Cal. July 26, 2019) ..........14

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008) ...........................................................9

*Li v. Jaddou*, 2023 U.S. App. LEXIS 11721 ......................................................... 10, 15

*Liberty Fund v. Chao*, 394 F. Supp. 2d 105, (D.D.C. 2005) ..............................................16

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ...................9

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003).............. 15, 16

*Norton v. S. Utah Wilderness, All.*, 542 U.S. 55 (2004)......................................................10

*Pedrozo v. Clinton*, 610 F.Supp.2d 730 (S.D. Tex. 2009)...................................................15

*Pesantez v. Johnson*, No. 15 Civ. 1155(BMC), 2015 WL 5475655 (E.D. N.Y. Sept. 17, 2015) ..13

*Pittston Coal Grp. v. Sebben*, 488 U.S. 105 (1988) ........................................................13

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) .....................................................14

*Ramming v. U.S.*, 281 F.3d 158 (5th Cir. 2001) ..............................................................9

*Research & Action Ctr. v. Fed. Commc'n*, ("TRAC"), 750 F. 2d 70 (D.C. Cir. 1984) ...................15

*Ruan v. Wolf*, 19-cv-4063 (ARR) (RER), 2020 U.S. Dist. LEXIS 23559 (E.D.N.Y. Feb. 20, 2020)...............................................................................................................16

*Salar v. USCIS*, CIVIL ACTION NO. 23-1997, 2023 U.S. Dist. LEXIS 224377 (E.D. La. Dec. 15, 2023) .................................................................................................12

*Thomas v. Barry*, 729 F.2d 1469  (D.C. Cir. 1984)..........................................................11

*Varol v. Radel*, 2019 WL 5394628 (S.D. Cal. Oct. 22, 2019) .............................................13

*Yueliang Zhang v. Wolf*, No. 19-cv-5370 (DLI), 2020 WL 5878255 (E.D.N.Y. April 25, 2019) ........................................................................................................................13

## **Statutes**

5 U.S.C. § 555(b)..............................................................................................15

5 U.S.C. § 701(a) .............................................................................................10

5 U.S.C. § 706(1) ............................................................................................... 10, 14

8 U.S.C. § 1101(a)(42)(A) ...................................................................................... 2

8 U.S.C. § 1158 ...................................................................................................... 7

8 U.S.C. § 1158(a)(1) ............................................................................................. 2

8 U.S.C. § 1158(a)(2)(B) ........................................................................................ 2

8 U.S.C. § 1158(b)(1)(B)(i) ..................................................................................... 2

8 U.S.C. § 1158(d) ................................................................................... 1, 4, 10, 12

8 U.S.C. § 1158(d)(5) ............................................................................................ 12

8 U.S.C. § 1158(d)(7) ....................................................................................... 11, 12

8 U.S.C. § 1159(b) .................................................................................................. 2

8 U.S.C. § 1182(d)(5) ............................................................................................. 8

8 U.S.C. § 1229a ..................................................................................................... 7

8 U.S.C. § 1324a ..................................................................................................... 3

28 U.S.C. § 1361 ................................................................................................... 13

Pub. L. No. 104-208 ............................................................................................... 4

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 9

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 9

Federal Rule of Civil Procedure 56(a) .................................................................. 9

Federal Rule of Civil Procedure 56(c) .................................................................. 9

**Regulations**

8 C.F.R. § 208.2 ..................................................................................................... 2

8 C.F.R. § 208.7(a)(1)(ii) (2020) ............................................................................ 3

8 C.F.R. § 208.7(b) ........................................................................................................... 8

8 C.F.R. § 212.5(f) ........................................................................................................ 2, 8

8 C.F.R. § 274a.12(a)(5) ................................................................................................... 2

8 C.F.R. § 274a.13(d) (1994) ...................................................................................... 3, 4

59 Fed. Reg. 14779 (Mar. 30, 1994) .............................................................................. 4

**Other Authorities**

*Making Asylum Policy: The 1994 Reforms*, 70 Wash. L. Rev. 725 (1995) ......................... 4

2020 USCIS Ombudsman Ann. Rep. ("Ombudsman Rep." Rep. 43, available at
https://www.dhs.gov/sites/default/files/publications/20_0630_cisomb-2020-annual-report-to-congress.pdf ............................................................................................................ 5

USCIS, Travel Documents, available at https://www.uscis.gov/green-card/green-card-processes-and-procedures/travel-documents ............................................................................ 8

Defendants, the Secretary of Homeland Security and the Director of the United States Citizenship and Immigration Services (USCIS), et al., move to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.

## I.   <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

Plaintiff Delphine Uwimbabazi, and several of her derivative family members, seek an order from this Court compelling USCIS to adjudicate her Form I-589, Application for Asylum and for Withholding of Removal, which she submitted on November 30, 2020. Dkt. 1, ¶ 5. Citing the Mandamus Act and the Administrative Procedure Act ("APA"), Plaintiff alleges that USCIS has failed to perform a mandatory duty and unreasonably delayed adjudicating her asylum application.

The Complaint should be dismissed for lack of jurisdiction. The applicable law, 8 U.S.C. § 1158(d), provides the Plaintiff with no substantive or procedural rights affording this Court subject matter jurisdiction over Plaintiff's claims. Courts in the Fifth Circuit, including courts in this district, have recently held that similar asylum delay cases fail as a matter of law. *See, e.g., Ayana v. Jaddou*, No. CV H-23-2937, 2023 WL 8936700, at *1 (S.D. Tex. Dec. 27, 2023) (dismissing asylum delay case); *Ayvali v. Dept. of Homeland Security*, No. 1:23-CV-896-RP, 2024 U.S. Dist. LEXIS 54712, at *12-13 (W.D. Tex. Mar. 27, 2024) (same); *Kizilyildirim, v. Daum et. al,* No. 4:23-CV-03287, 2024 WL 1722277, at *1 (S.D. Tex. Mar. 29, 2024), recommendation adopted by, 2024 WL 1719924 (S.D. Tex. Apr. 22, 2024) (same). There is no reason to deviate from those decisions here.

Even if jurisdiction exists, the Court should dismiss the Complaint because the Plaintiff fails to plead sufficient facts to suggest that she is entitled to the relief she seeks. Alternatively, the Plaintiff cannot establish as a matter of law that the timeframe for processing her application is unreasonable under the circumstances.

## II.    STATEMENT OF THE ISSUES

1.  Whether the Court has subject matter jurisdiction over Plaintiff's claims.

2.  Whether Plaintiff failed to identify any clear statutory or regulatory duty that Defendant owes to warrant the extraordinary relief of mandamus.

3.  Whether Plaintiff failed to allege sufficient facts to support a claim of unreasonable delay in violation of the Administrative Procedures Act.

4.  Whether the delay in adjudicating Plaintiff's asylum application is unreasonable.

## III.    STATEMENT OF FACTS

### A.  The Asylum Process

The Immigration and Nationality Act ("INA") permits any alien "who is physically present in the United States or who arrives in the United States… irrespective of such alien's status," to apply for asylum in the United States, absent certain circumstances. 8 U.S.C. § 1158(a)(1). In general, an alien seeking asylum must apply within one year after arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). An application may be filed affirmatively before USCIS or as a defensive measure during removal proceedings in immigration court. 8 C.F.R. § 208.2. To qualify for asylum, an asylum applicant must demonstrate either past persecution or a well-founded fear of future persecution on account of any of the protected grounds listed in the statute. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). A grant of asylum provides an individual

with the ability to legally remain in the United States indefinitely, obtain employment authorization (8 C.F.R. § 274a.12(a)(5)), seek permission to travel in and out of the United States (8 C.F.R. § 212.5(f)), and apply for permanent resident status after one year (8 U.S.C. § 1159(b)).

Asylum seekers may work while their cases are pending. 8 U.S.C. § 1324a. An asylum applicant is eligible to file an application for employment authorization ("Form I-765") 150 calendar days after filing the asylum application, provided the application has not been denied by either an Asylum Officer or an immigration judge. 8 C.F.R. § 208.7(a)(1)(ii) (2020). The authorization is renewable for as long as the asylum application remains pending. *Id.* § 208.7(b).

The Asylum Division of USCIS adjudicates asylum applications. *See* Declaration of John L. Lafferty, Chief of the Asylum Division, USCIS ("Lafferty Decl.") ¶ 2, attached as Exhibit 1. In addition to handling asylum applications, these offices handle credible and reasonable fear screening determinations as part of the expedited removal process. *Id.* ¶ 2(b), (c). Additionally, the Asylum Division adjudicates applications for relief under section 203 of the Nicaraguan Adjustment and Central American Relief Act, and conduct threshold screening assessments to determine whether individuals who arrive in the United States at U.S.-Canada land border ports of entry or cross between land border ports of entry are ineligible to apply for asylum and subject to removal to Canada. Lafferty Decl. ¶ 2(d)-(e).

**B. Asylum Scheduling and Backlog Management**

In the 1990s many asylum seekers filed frivolous or fraudulent asylum applications to obtain authorization for lawful employment, rather than a legitimate need for protection from persecution. Lafferty Decl. ¶ 9. Under the regulations at that time, asylum applicants could

obtain employment authorization if the government failed to adjudicate their applications within 90 days. *Id.* (citing 8 C.F.R. § 274a.13(d)). Because the majority of applications at that time were not able to be adjudicated within 90 days, the former Immigration and Naturalization Service ("INS") mailed an employment authorization document to the applicant upon receipt of an asylum application. *Id.*; s*ee also* David Martin, *Making Asylum Policy: The 1994 Reforms*, 70 Wash. L. Rev. 725, 734 (1995). The consequences of this practice were staggering; by 1994, the number of meritorious as well as frivolous or fraudulent asylum applications ballooned to well over 400,000. Lafferty Decl. ¶ 9.

To address this issue, the INS instituted regulatory reforms to extend the waiting period for employment authorization to 180 days. Lafferty Decl. ¶ 10; 8 C.F.R. § 208.7(a)(1)(1998); 59 Fed. Reg. 14,779-01 (Mar. 30, 1994). Congress codified this regulatory reform into statute. *See* 8 U.S.C. § 1158(d); H.R. Rep. No. 104-469(I) at 139 (Mar. 4, 1996) (noting that the asylum process "ha[d] provided protection to thousands of legitimate claimants, but ha[d] been subject to abuse by tens of thousands more who filed non-legitimate claims simply in order to extend their stay in the U.S. and receive work authorization"). Congress also adopted the aspirational timelines in 8 U.S.C. § 1158(d)(5)(A)(ii), (iii), which, absent exceptional circumstances, contemplate the initial asylum interview to be conducted within 45 days and the asylum application to be adjudicated within 180 days after filing. Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-690 (1996). However, Congress did not go so far to adopt penalties for failure to adjudicate within the 180-day time frame.

In another attempt to reduce the backlog, the Asylum Division also implemented a "Last-In-First-Out" ("LIFO") scheduling system whereby the Asylum Division scheduled

recently filed affirmative asylum cases for interview ahead of older cases. Lafferty Decl. ¶ 11.

"Giving priority to the newest cases put applicants on notice that filing asylum applications primarily to obtain work authorization carried a significant risk that their cases would be heard quickly and that their efforts to obtain work authorization would be fruitless." *Id.* This scheduling system reduced the incentive to file fraudulent asylum claims to obtain employment authorization documents by scheduling new cases sooner rather than later. *Id.* Through use of this scheduling system the Asylum Division was eventually able to reduce its backlog from 464,100 cases in 1995 to 4,200 in 2013. *Id.* at ¶ 12.

### C. Current Backlog of Applications

Starting in 2013, this country experienced a dramatic "surge of foreign nationals attempting to enter the United States at and between ports of entry who, once apprehended, express fear of returning to their home countries, thereby warranting a fear screening." *See*, 2020 USCIS Ombudsman Ann. Rep. ("Ombudsman Rep." Rep. 43, available at https://www.dhs.gov/sites/default/files/publications/20_0630_cisomb-2020-annual-report-to-congress.pdf (noting that apprehensions of inadmissible aliens at the southern border rose from 44,859 in FY 2015 to 977,509 in FY 2019); *see also* Lafferty Decl. at ¶ 13. A corresponding surge in cases involving unaccompanied children also required reallocating the limited number of asylum officers away from adjudicating affirmative asylum applications. Lafferty Decl. ¶ 18 (noting that the number of unaccompanied alien children who applied for asylum rose from 410 in 2012 to 18,060 in 2017). Given this surge, the Asylum Division began prioritizing the processing of unaccompanied children's asylum applications, which further

diverted Asylum Officers from the adjudication of other affirmative asylum applications. Lafferty Decl. at ¶¶ 18-19.

With so few officers adjudicating affirmative asylum applications, the LIFO scheduling system was no longer an effective tool for discouraging non-meritorious or fraudulent applications. Lafferty Decl. ¶ 20. Consequently, in December 2014, the Asylum Division changed to a First-In-First-Out ("FIFO") scheduling system whereby asylum interviews were scheduled in the order that the applications were filed to reflect the priorities at the time. *Id.* However, as had occurred in the 1990s, the use of FIFO scheduling resulted in an increase in fraudulent filings to obtain employment authorization. *Id.* ¶ 21. To stem the rising tide of fraudulent filings, the Asylum Division announced it would return to the LIFO scheduling system on January 31, 2018. Lafferty Decl. ¶ 23. Applications where interviews needed to be rescheduled were prioritized first, applications pending 21 days or less since filing were prioritized second, and any other pending applications were prioritized third. Lafferty Decl. ¶ 24. The rationale for reinstituting LIFO was that it "reduces the incentive to file non-meritorious asylum applications solely to obtain employment authorization". Lafferty Decl. ¶ 29.

As anticipated, after announcing the end of LIFO scheduling, the number of affirmative applications filed per year increased from 56,898 in FY 2014 to 83,197 in FY 2015 (+46%); to 114,965 in FY 2016 (+38%); to 141,695 in FY 2017 (+23%). *Id.* ¶ 33 (Chart 2). The backlog grew correspondingly. In FY 2015, the year after dropping LIFO, the backlog grew 77%; in FY 2016 it grew 79%; and in FY 2017 it grew 49%. *Id.* After the re-imposition of LIFO in 2018, however, the number of affirmative applications filed per year *decreased* from

141,695 in FY 2017 to 106,147 in FY 2018 (-25%); to 95,959 in FY 2019 (-10%); and to 94,077 in FY 2020 (-2%). *Id.* ¶ 33 (Chart 2). Significantly, since re-instituting LIFO the annual growth of the backlog has dropped dramatically to only 10% in FY 2018, 7% in FY 2019, 13% in FY 2020, and 7% in 2021 *Id.*

In 2022, asylum applications increased by over 305% and the backlog increased by almost 39%. Lafferty Decl. at ¶ 34 and Chart 3. The increases were attributable to several factors, including an increase in applications from countries experiencing unrest (such as Colombia, Cuba, Haiti, Nicaragua and Venezuela), ¶ 35, and many erroneous filings (applications filed with USCIS, when they should have been raised in immigration court), ¶ 36.

In addition to re-instituting LIFO in 2018, USCIS adopted additional measures to address the backlog. In February 2022, the Asylum Division received more than 150 appropriated positions, including 80 appropriated Asylum Officer positions specifically earmarked for backlog reduction. *Id.*[1] ¶ 44. The 2024 budget requested supplemental funding for an additional 1,600 asylum officers and associated support staff. *Id.* ¶ 46. In January 2024, USCIS updated its fee structure for the first time since 2016, which will allow USCIS to cover a greater share of its operating costs and support more timely processing of new asylum applications. *Id.* ¶ 43. The Asylum Division has also implemented new technology to streamline

---

[1] Although Congress did not appropriate funding for backlog reduction work in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, (Dec. 29, 2022), despite the President's budget request of $765 million to reduce USCIS backlogs and fund humanitarian programs, USCIS was able to keep these new asylum officers onboard. However, in light of the extremely high number of credible fear screenings and OAW applications that USCIS must adjudicate, most of these officers are currently assigned to higher-priority workloads.

adjudication of asylum applications and to close out cases more efficiently and consistently. *Id.* ¶ 56.

The Asylum Division has also taken steps to address non-meritorious cases known as "cancellation cases" that generally contribute to the backlog. *Id.* ¶ 53. These are cases filed by people who have lived in the United States for ten years or more, and who are statutorily ineligible from affirmative asylum in the absence of exceptional circumstances. *Id.;* 8 U.S.C. § 1158 (a)(2)(B). Once the application is denied by UCSIS, the individual is placed into removal proceedings, where he or she may be eligible for cancellation of removal from the immigration judge which would afford them lawful permanent residency. *Id.*; *See also* 8 U.S.C. §1229a. There is no mechanism to allow individuals to affirmatively file for cancellation, so consequently individuals may file meritless applications for asylum in the hope that the Asylum Division will issue them a Notice to Appear in immigration court where they can apply for cancellation of removal. *Id.* The Asylum Division estimates that approximately 53,800 of the cases in the backlog were filed by people living in the U.S. for ten years or more. *Id.* ¶ 54. To address these late-filed cases, the Asylum Division started a pilot program, formalized in 2023, that allows such applicants to waive an asylum interview and be referred to immigration court. *Id.* ¶ 55.

### D. Recent Developments

By the end of FY 2024 Q2, the affirmative asylum backlog totaled 1,161,686 applications, driven in large part by substantial increases in receipts of affirmative asylum applications in FY 2022 and FY 2023. Lafferty Decl. at ⁋ 33 (Chart 2). At the Houston Asylum Office, there are over 171,700 total asylum applications pending initial interviews, with over 143,956 of those being filed in 2020 or later. *See* Ex. 2, Declaration of Bryan Hemming

("Hemming Decl.") at ¶ 27. While USCIS continues to conduct interviews according to the LIFO scheduling policy, USCIS is now also assigning some of its limited asylum officer corps to complete affirmative asylum cases pending in the backlog, starting with the oldest cases and working forward toward newer filings. Lafferty Decl. at ¶ 30. Accordingly, USCIS now schedules affirmative asylum interviews along two tracks simultaneously, effectively addressing affirmative asylum cases from both ends of the queue. *Id.* at ¶ 31.

### E. Plaintiff's Asylum Application

Plaintiff is a citizen of Rwanda. Dkt. 1 ¶ 5; *see also* Hemming Decl. at ¶ 23. She was admitted to the United States on an A-2 nonimmigrant visa. Hemming Decl. at ¶ 24. In November of 2020, Plaintiff filed an application for asylum. Dkt. 1 ¶ 5; Hemming Decl. at ¶ 25. She included dependents relatives on her asylum application, who are also Plaintiffs in this case. Hemming Decl. at ¶ 25. USCIS granted Plaintiff, and her dependents, an Employment Authorization Document ("EAD"). Hemming Decl. at ¶ 30. The EADs are currently valid and eligible for automatic extensions. *Id.*

The Asylum Office Directors have discretion to schedule cases out of order when an applicant presents exigent circumstances, such as the need to obtain medical care or fears for the safety for their spouse and children in the home country. Lafferty Decl. ¶ 30; Hemming Decl. at ¶ 28. Additionally, an applicant for asylum who needs to travel outside the United States while their application is pending may apply for an Advance Parole Document when the request is justified by urgent humanitarian reasons or significant public benefit. 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(f); *see also* https://www.uscis.gov/green-card/green-card-processes-and-procedures/travel-documents. Finally, there are procedures for requesting

expedited consideration of an asylum application, but Plaintiff has made no such request. *See* Hemming Decl. at ¶ 28.

## IV.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff seek an Order from this Court compelling USCIS to adjudicate her asylum application either immediately or by a date certain. Dkt. 1 at Prayer for Relief. For the reasons discussed below, however, this Court should dismiss the complaint or, alternatively, grant summary judgment to the Defendants.

## V.    STANDARD OF REVIEW

### A. 12(b)(1) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss for lack of subject-matter jurisdiction. "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. 12(b)(6) Motion to Dismiss

In evaluating a Rule 12(b)(6) motion, courts must accept the well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### C. Rule 56(c) Motion for Summary Judgement

Rule 56(a) states that summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). *See Ahmed v. Bitter*, --- F.Supp.3d ---, 2024 WL 1340255 (S.D. Tex. Mar. 28, 2024) (granting summary judgment on complaint alleging unreasonable delay in adjudication of a visa application). When a moving party sufficiently demonstrates that the non-moving party has failed to satisfy the evidentiary burden for an element of the cause of action, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## VI.  ARGUMENT

### A. This Court Lacks Subject Matter Jurisdiction to Review Plaintiff's APA and Mandamus Claims.

The APA generally creates a limited cause of action for judicial review of agency actions unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706 (1). *See Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986). That limited cause of action, however, authorizes courts to compel only those agency actions clearly required by law. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004); *see also Norton*, 542 U.S. at n.1. An exception to this limited cause of action also exists for agency actions where judicial review is precluded by statute or an agency is given, by law, discretion to conduct such actions. *See* 5 U.S.C. § 701(a);

*see also Heckler v. Chaney*, 470 U.S. 821, 830 (1985). For this Court to properly have jurisdiction, Plaintiff must avoid both of these exceptions, which she cannot do.

First, Plaintiff cites to, and relies upon, 8 U.S.C. § 1158(d) as providing a time frame for adjudicating asylum applications. Dkt 1 at ¶ 1. However, "the statute also establishes that these timeframes are aspirational". *Ayvali v. Jaddou,* 2024 U.S. Dist. LEXIS 54712, *9 (W.D. Tex. March 27, 2024) (citing to 8 U.S.C. § 1158(d)(5)(A)(ii), iii); 1158 (d)(7)). *See also Li v. Jaddou*, 2023 U.S. App. LEXIS 11721, at *1 (holding that adjudication of a permanent residency application was not unreasonably delayed where the application had been pending for one year and the statute gave an aspirational timeframe of six months for adjudication). "[A] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." *Thomas v. Barry*, 729 F.2d 1469 n.5 (D.C. Cir. 1984) (adopting *Fort Worth Nat'l Corp. v. Fed. Sav. Loan Corp.*, 469 F.2d 47 (5th Cir. 1972)). Although the statute identifies an aspirational deadline, it fails to identify consequences for failing to satisfy that requirement. As such, the statutory language doesn't provide a judicially enforceable remedy. Congress made clear those timelines are precatory rather than mandatory, by providing that "nothing [in subsection d] shall be construed to create any substantive or procedural right or benefit that is legally enforceable against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). The Court lacks jurisdiction here because there is no mandatory duty to adjudicate Plaintiff's asylum application within a specific time.

Second, as stated above, Plaintiff is statutorily precluded from claiming a private right of action to enforce the deadlines set forth in the immigration statute. *See* 8 U.S.C. § 1158(d)(7)

("nothing in [§ 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."). While § 1158(d)(5)(A)(ii) and (iii) contemplate that, absent exceptional circumstances, asylum interviews should be scheduled within 45 days, and applications should be adjudicated within 180 days, from filing, subsection (d)(7) bars any suit arising from failure to meet those timeframes. 8 U.S.C. § 1158(d)(7). Given the unambiguous preclusion of any claim arising from the timeframes, the Court lacks jurisdiction to hear a case seeking to enforce them. *Ayana v. Jaddou,* 2023 U.S. Dist. LEXIS 229411 (S.D. Tex. Dec. 27, 2023) (plaintiff does not have a private right of action to enforce the timing provisions of 8 U.S.C. § 1158(d)(5)).

Claims virtually identical to those presented here were recently rejected in *Kizilyildirim v. Daum,* No. 4:23-CV-03287, 2024 WL 1722277 (S.D. Tex. Mar. 29, 2024), recommendation adopted by, 2024 WL 1719924 (S.D. Tex. Apr. 22, 2024). In *Kizilyildirim,* the plaintiff, pointing to 8 USC § 1158(d)'s deadlines, claimed that his asylum application was unreasonably delayed and sought to compel enforcement. The court, finding that it lacked jurisdiction over plaintiff's APA claim, stated that "Section 1158(d)(7) makes plain that a plaintiff cannot base an APA claim on the time frame laid out in § 1158(d)." *Id.* at *5 (cleaned up). "Because Section 1158(d)(7) bars Kizilyildirim's attempt to enforce the deadlines in 1158(d)(5)(A), he cannot enforce those deadlines under the APA." *Id. ; see also Ayana v. Jaddou,* 2023 U.S. Dist. LEXIS 229411, *7 (S.D. Tex. Dec. 27, 2023) (dismissing APA claims because plaintiff does not have a private right of action to enforce the timing provisions of 8 U.S.C. § 1158(d)(5) and this court lacks jurisdiction to force the agency to adjudicate a delayed asylum application); *Ayvali*

13

*v. Jaddou,* 2024 U.S. Dist. LEXIS 54712, *9 (W.D. Tex. March 27, 2024) (holding that the court lacked jurisdiction over plaintiff's APA claims arising from the alleged unreasonable delay in adjudicating an asylum application); *Salar v. USCIS*, 2023 U.S. Dist. LEXIS 224377 (E.D. La. Dec. 15, 2023) (same). For the foregoing reasons, the Court lacks jurisdiction under the APA to compel an adjudication of Plaintiff's asylum application.

**B. Plaintiff Fails to Allege Sufficient Facts to Support Her Mandamus Act Claim.**

Mandamus relief under 28 U.S.C. § 1361 is an "extraordinary remedy" used solely to compel "performance of a clear nondiscretionary duty," *Pittston Coal Grp. v. Sebben*, 488 U.S. 105 (1988), only after a plaintiff has exhausted all other avenues of relief. *Heckler v. Ringer*, 466 U.S. 602 (1984). When determining whether a writ of mandamus is appropriate relief, courts have looked at three criteria: (1) the plaintiff must have a clear right to relief; (2) the defendant must have a clear duty to act; and (3) no alternative adequate remedies are available to the plaintiff. *Council of and for the Blind of Delaware County Valley v. Regan*, 709 F.2d 1521 (D.C. Cir. 1993); *Jones v. Alexander*, 609 F.2d 778 (5th Cir. 1980).

As noted above, Plaintiff cannot identify any clear statutory or regulatory duty that Defendants owe to warrant the extraordinary relief of mandamus. This Court, in *Ayana v. Jaddou,* 2023 U.S. Dist. LEXIS 229411, *7 (S.D. Tex. Dec. 27, 2023), succinctly stated that "this court lacks authority to issue mandamus relief to compel the agency to decide [plaintiff's] application under 28 U.S.C. § 1361 because timely action is not an agency duty that is enforceable by an impatient applicant." Multiple other district courts across the country, when presented with the same argument advanced by plaintiff, have denied mandamus relief. *See, e.g., Kizilyildirim*, 2024 WL 1722277 (holding that mandamus relief was unavailable); *Pesantez v.*

14

*Johnson*, No. 15 Civ. 1155(BMC), 2015 WL 5475655, at *2 (E.D. N.Y. Sept. 17, 2015) (holding that mandamus relief for asylum adjudications "is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action"); *Yueliang Zhang v. Wolf*, No. 19-cv-5370 (DLI), 2020 WL 5878255, at *4 (E.D.N.Y. April 25, 2019); *Varol v. Radel*, 2019 WL 5394628, at *6 (S.D. Cal. Oct. 22, 2019); *Lajin v. Radel*, No. 19cv52-MMA (BLM), 2019 WL 3388363, at *5 (S.D. Cal. July 26, 2019). This Court should not deviate from these prior holdings. Plaintiff's claim for mandamus relief fails as a matter of law.

### C. Plaintiff Fails to Allege Sufficient Facts to Support Her APA Claim.

Assuming the Court has jurisdiction, the Court should nevertheless dismiss plaintiff's complaint for failing to allege sufficient facts to establish a plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiff cites to the passage of time to support her claim that Defendant has unreasonably delayed adjudication of her I-589 asylum application in violation of 5 U.S.C. § 706(1). Dkt. 1 ¶¶ 1-2. While the passage of time is a fact, plaintiff's assertion that this passage of time is *unreasonable* is merely a recitation of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (the "tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported but mere conclusory statements"); *see also, Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ("We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims they are pleading . . . rather than providing some specific facts to ground those legal claims…."); *see also Plotkin v. IP Axess Inc.*, 407 F.3d

690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

In *Twombly*, the Supreme Court held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Two years after *Twombly*, the Court provided courts with a two-step analysis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). At the first step, a court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. At the second step, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The application of the *Twombly* analysis is particularly well suited to actions, like this one, that ask the district court to compel agency action unlawfully withheld or unreasonably delayed in violation of § 706(1). "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003); *Pedrozo v. Clinton*, 610 F.Supp.2d 730 (S.D. Tex. 2009) ("[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case"). An examination of the effect of competing priorities on agency resources is required to determine whether the time it takes for an agency to address an application is unreasonable. *In re Barr Laboratories*, 930 F. 2d 72 (D.C. Cir. 1991).

In deciding agency delay cases, the courts often rely on factors established in *Telecomm. Research & Action Ctr. v. Fed. Commc'n ("TRAC")*, 750 F. 2d 70 (D.C. Cir. 1984). However, the Fifth Circuit has declined to adopt the *TRAC* factors. *See Li v. Jaddou*, No. 22-50756, 2023 U.S.

Dist LEXIS 11721, *2 n.2 (5th Cir. May 12, 2023) (stating that "this circuit has never adopted that multi-factor test"). Regardless, when considering a motion to dismiss, "the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 U.S. Dist. LEXIS 47623, *19 n.6 (D.D.C. Mar. 19, 2020).

Given the above, plaintiff's complaint, which merely parrots the statutory language falls far short of the requirement of *Twombly. See Ruan*, 2020 U.S. Dist. LEXIS 23559 at *13 (Noting that plaintiff's "sparse complaint did not state enough facts" to "plausibly state a claim for delayed agency action"). Plaintiff states that she has been waiting almost 4 years for her application to be adjudicated. Dkt. 1. *See De Oliveira v. Barr*, No. 19-CV-1508 (ENV) 2020 U.S. Dist. LEXIS 71025 at *11 ("asylum seekers here put all their eggs in one basket, relying on the length of delay as the primary reason and, appear to ignore the other TRAC factors"). The passage of time cannot, standing alone, support a claim of unreasonable delay. *INS v. Miranda*, 459 U.S. 14 (1982) ("The only indication of negligence is the length of time that the INS took to process respondent's application. Although the time was indeed long, we cannot say in the absence of evidence to the contrary that the delay was unwarranted."); *Mashpee Wampanoag Tribal Counsel, Inc. v. Norton,* 336 F.3d 1094 (D.C. Cir. 2003) (noting that unreasonable delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency"); *Liberty Fund v. Chao,* 394 F. Supp. 2d

105, (D.D.C. 2005) ("measuring the delay by years alone cannot establish unreasonable delay");

*Kolluri v. USCIS*, Civil Action No. 3:20-CV-02897-N, 2021 U.S. Dist. LEXIS 9004, at *20

(N.D. Tex. Jan. 17, 2021) (adopting the same proposition as *Liberty Fund and Mashpee Wampnoag*).

In any event, plaintiff's pleadings, being no more than conclusions, are not entitled to the assumption of truth under the first step of *Twombly*. Just as in *Twombly*, where the defendants' parallel conduct was indicative of both lawful and unlawful conduct, the passage of time here is indicative of both reasonable and unreasonable delay. Thus, before this Court can determine whether the time it has taken the agency to adjudicate Plaintiff's application is unreasonable, Plaintiff must first adequately plead by some factual assertion other than the mere passage of time that raises a plausible ground to infer the time it has taken the agency to adjudicate her application is unreasonable. *Twombly*, 550 U.S. at 556 (holding that under the Sherman Act "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

**D. The Delay in the Adjudication of Plaintiff's Application is Not Unreasonable**

If the Court determines that it has jurisdiction over the present case, judgment should be granted in Defendant's favor because the Plaintiff has failed to demonstrate that the scheduling of her asylum interview and subsequent adjudication of the application has been subject to unreasonable delay. An examination of the effect of competing priorities on agency resources is required to determine whether the time it takes for an agency to address an application is unreasonable. *In re Barr Laboratories*, 930 F. 2d 72, 75 (D.C. Cir. 1991).

18

The time USCIS takes to make decisions on asylum applications is governed by a rule of reason. USCIS recognizes there has been a delay in adjudicating asylum applications due to a number of factors outside the agency's control, such as the dramatic, increased volume of asylum applications received during the period of time in which USCIS switched to adjudicating applications in chronological order of receipt, and sustained patterns of irregular migration, leading to historic numbers of individuals seeking protection at the United States' southwest border. *See generally* Lafferty Decl.

To address this problem, USCIS re-implemented a LIFO scheduling policy in 2018, whereby the most recent applications are adjudicated first and most recently began assigning officers to resolve the oldest applications in the backlog. Lafferty Decl. ¶¶ 27, 32. This method of scheduling has proven to be a very effective tool in discouraging fraudulent or meritless filings, which had contributed to the exponential increase in filings during the period where applications had been scheduled for interview on a first-in-first-out basis. *Id.* ¶ 28. Further, USCIS is implementing new measures to address pending applications: assigning some of its limited asylum officer corps to complete affirmative asylum cases pending in the backlog. *Id.* ¶ 31. In light of the forgoing facts, this Court has noted:

> The bottom line is that for now, [the asylum applicant] must continue to wait. While the court sympathizes with [the applicant's] frustration, it is a frustration shared by millions in his position. To give him an accelerated place in line would add to the wait another would endure. The USCIS has identified many steps it has taken and is taking to speed the processing and adjudicating of asylum applications. More is needed, but that "more" is beyond this court's power to provide.

*Ayana*, 2023 WL 8936700, at *4; *see also Kizilyildirim*, 2024 WL 172277 (holding, in the alternative, that the *TRAC* factors uniformly indicate that the Government has not

unreasonably delayed adjudicating [the plaintiff's] asylum application"). Thus, the delay in adjudicating Plaintiff's asylum application has not been unreasonable.

## VII.  CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court grant their motion and dismiss Plaintiffs' claims in their entirety. In the alternative, summary judgment should be granted in favor of Defendants.

Dated: January 20, 2025

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

*s/Jimmy A. Rodriguez*
JIMMY A. RODRIGUEZ
Attorney in Charge
Assistant United States Attorney
Texas Bar No. 24037378
Federal ID No. 572175
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
Jimmy.Rodriguez2@usdoj.gov

Attorneys for Defendant

20

## CERTIFICATE OF SERVICE

I certify that on January 20, 2025, the foregoing was filed and served on counsel of record through the Court's CM/ECF system.

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
