| | |
|---|---|
| DELPHINE UWIMBABAZI, et al.,      ) | |
|                    ) | |
|             Plaintiff(s)    ) | |
|                    ) | |
|         v.               ) | |
|                    ) | Civil Action No. 4:24-cv-04231 |
| ALEJANDRO MAYORKAS, et. al.,    ) | |
|                    ) | |
|                    ) | |
|           Defendant(s).    ) | |
|                    ) | |
|                    ) | |
|                    ) | |
| _____ ) | |

## <u>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Sadaf F. Ahmed, Attorney for Plaintiff, JEELANI LAW FIRM, PLC, 3701 W Algonquin Rd Suite 630, Rolling Meadows, IL 60008, Ph: 312-767-9030, Facsimile: 312-767-9030, Email: sadaf@jeelani-law.com.

# TABLE OF CONTENT

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

I.    Introduction and Summary of the Argument ............................................... 6

II.   Statement of the Issues ................................................................................ 7

III.  Statement of the facts

     A.  Statutory and Regulatory Framework for the Asylum Process ............................. 8

     B.  Interview Scheduling and Efforts to Manage the Asylum Backlog ................... 10

     C.  History of USCIS's Efforts to Address the Asylum Backlog ............................ 10

     D.  The Current State of USCIS's Backlog Management Efforts ............................ 12

     E.  Plaintiff's Application ............................................................................. 14

IV.  Standard of Review

     A.  12(b)(1) Motion to Dismiss ................................................................ 15
     B.  12(b)(6) Motion to Dismiss ................................................................ 16
     C.  Rule 56(c) Motion for Summary Judgment ....................................... 17

V.   Argument ................................................................................................... 18

     A.  This Court Does Not Lack Subject-Matter Jurisdiction Over Plaintiff's APA and Mandamus Claims ............................................................................. 19

     B.  Plaintiff Does Not Fail to Allege Sufficient Facts to Support His Mandamus Act Claim......................................................................................................... 22

     C.  Plaintiff Does Not Fail to Satisfy the Factors to State a Claim of Unreasonable Delay Under the APA ...................................................................................... 23

     D.  The Delay in Adjudicating Plaintiff's Application is Unreasonable ................. 26

  V.  Conclusion
   .......................................................................................................... 29

Certificate of Service ...................................................................................... 30

## CASES

*Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) .................................... 17

*Alverez v. Raufer,* CIVIL ACTION NO. 19-3155 (E.D. Pa. Mar. 11, 2020) ........................... 21

*Anzevino v. DePasquale*, No. 4:08 CV 2492, 2009 WL 1662498, at *9–10 (N.D. Ohio June 15, 2009) .................................................................................................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 16

*Ayana v. Jaddou*, 2023 U.S. Dist. LEXIS 229411 (S.D. Tex. Dec. 27, 2023) ........................... 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) ............................................................. 16

*Briseda v. Lehman*, 23-cv-00495-TSH, 6 (N.D. Cal. May. 8, 2024 ........................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .................................................................... 17

*De Oliveira v. Barr*, No. 19-CV-1508 (ENV), 2020 WL 1941231, (E.D.N.Y. Apr. 22, 2020) .................................................................................................................................................. 23, 26

*Desai v.USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, (D.D.C. March 21 2021)............. 27

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ..................................... 16

*Herbert v. Nat'l Acad.* of *Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) .................................. 16

*Hui Dong v. Cuccinelli*, No. 2:20-cv-10030-CBM (PLAx), 2021 WL 1214512, at *2 (C.D. Cal. Mar. 2, 2021 ............................................................................................................................. 21

*Iddir v. INS,* 301 F.3d 492, 499 (7th Cir. 2002) ........................................................................ 19

*Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) ........................................ 17

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582, at 582–83 (6th Cir. 2007) ............. 16

*Kang v. Jaddou*, 2022 WL 2189634, at *2 (C.D. Cal. Apr. 25, 2022) ........................................ 20

*Karimushan v. Chertoff*, WL 2405729 (E.D. PA 2008) ................................................................ 21

*Kizilyildirim v. Daum*, No. 4:23-CV-03287, 2024 WL 1722277 (S.D. Tex. Mar. 29, 2024) ...... 23

*Kucana v. Holder*, 558 U.S. 233, 251 (2010) ............................................................................. 21

*Papasam v. Allain*, 478 U.S. 265, 286 (1986) ............................................................................ 16

*Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ...................................................... 15

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ................................................... 15

*Saleh v. Blinken*, 2021 WL 4439185, at *5 (N.D. Cal. Sept. 28, 2021) ...................................... 23

*Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) ................................................................................................................................... 17

*Su v. Mayorkas*, - F.Supp.3d -, No. 23-cv-00566-KAW, 2023 WL 7209630, at *4 (N.D. Cal. Oct. 17, 2023 .................................................................................................................................... 20

*Tailawal v. Mayorkas*, No. 2:22-cv-01515-SPG (RAOx), 2022 WL 4493725, at *3 (C.D. Cal. Aug. 18, 2022) ................................................................................................................................ 21, 23

*Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984) ........................ 22

*Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) ................................................. 17

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) ......................................... 16

*Varol v. Radel*, 420 F.Supp.3d 1089, 1096 (S.D. Cal. 2019) ...................................................... 21

*Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F 3.D 1068, 1081 (9th Cir. 2016) ............. 20

*Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) ................................................................................................................................................ 17

**STATUTES**

5 U.S.C. §555(b) ............................................................................................................................. 24

8 U.S.C. § 1158(a)(3) ..................................................................................................................... 15

8 U.S.C. § 1158(b)(2)(D) ............................................................. 15

8 U.S.C. § 1158(d) ....................................................................... 7

8 U.S.C. § 1158(d)(7) ............................................................. 7, 21

8 U.S.C. § 1158(a)(1) ................................................................... 6

8 U.S.C. § 1158(d)(5)(A)(iii) ........................................... 6, 11, 19-22

8 U.S.C. § 1158(d)(5) ................................................................... 7

5 U.S.C. §701 ............................................................................. 7

28 U.S.C. § 1361 ............................................................. 18-19, 27

## Rules

Federal Rule of Civil Procedure 12(b)(1) ........................................ 15

Federal Rule of Civil Procedure 12(b)(6) ........................................ 16

Federal Rule of Civil Procedure 56(a) ............................................ 17

Federal Rule of Civil Procedure 56(c) ............................................ 17

# I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff DELPHINE UWIMBABAZI is a Rwandan national who properly and timely filed Form I-589, Application for Asylum and Withholding of Removal with USCIS on November 30, 2020. This action is brought as a result of Defendants' failure to adjudicate Plaintiff UWIMBABAZI's Form I-589, Asylum Application within the statutory period of 180 days pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii). Plaintiff UWIMBABAZI's application remains unadjudicated for over a total period of four years and two months (over 50 months or 1525 days) as of the date of this filing, and will likely continue to remain unadjudicated without judicial intervention. Furthermore, Plaintiff faces an increased risk of harm and deportation due to the defendant's continued failure to process her I-589, especially given the new administration and the heightened scrutiny of individuals without lawful status.

Plaintiff UWIMBABAZI has not brought the instant action simply to be pushed to the front of the line to the detriment of other noncitizen applicants, as Defendants would like this Court to believe. To the contrary, Plaintiff UWIMBABAZI simply asks that her Application be adjudicated within a reasonable period of time as required by law. Plaintiff is not requesting a specific outcome and fully acknowledges that USCIS is in the best position to determine whether she is eligible for asylum. Many courts have found that the 180-day statutory period for the adjudication of asylum applications creates a nondiscretionary duty to adjudicate Form I-589, as the statutory language anticipates, if not mandates, that Form I-589 be adjudicated within the prescribed 180-day period. 8 U.S.C. § 1158(d)(5).

Without judicial overview the Defendants will continue to subject Plaintiff and the thousands of other asylum applicants to multi-year delays, keeping asylum applicants in a state of limbo, claiming unfettered discretion in the adjudication of these applications and the like, when

in fact the agency inaction and unreasonable delay is arguably the result of agency inefficiency and a mismanagement of agency resources and Defendants should not be permitted to dismiss this inefficiency under broad or blanket justifications.

## II.    STATEMENT OF THE ISSUES

1. Whether this Court has subject matter jurisdiction over Plaintiff's claims.

2. Whether Defendant has a clear statutory or regulatory duty to adjudicate Plaintiff's asylum application, justifying the issuance of a writ of mandamus.

3. Whether Plaintiff has sufficiently alleged facts demonstrating an unreasonable delay in violation of the Administrative Procedure Act.

4. Whether the delay in adjudicating Plaintiff's asylum application is unjustified and unreasonable.

## III.    STATEMENT OF THE FACTS

### A. Statutory and Regulatory Framework for the Asylum Process

Noncitizens present in the United States are granted a statutory right to apply for asylum in the United States pursuant to 8 U.S.C. § 1158(a)(1). Section 1158(d) of the INA directs the Attorney General to establish a process for considering asylum applications while dictating the timeline in which asylum applications should be adjudicated. Defendants submit to the court that Section 1158(d)(7) prevents an individual from suing to enforce the deadlines set forth by Congress in Section 1158(d)(5). However, Plaintiff UWIMBABAZI's suit is grounded in the right to apply for asylum under Section 1158(a)(1) as well as the requirement for the reasonably prompt adjudication as outlined in the Administrative Procedures Act. 5 U.S.C. §555(b), 5 U.S.C. §701 et seq. The deadlines espoused by Congress in Section 1158(d)(5) are guidelines in determining

whether the delay in this case has been unreasonable.

Plaintiff UWIMBABAZI contends that a delay of now over four years and two months, in the context of the deadlines set forth in Section 1158(d)(5), cannot be considered as constituting reasonably timely adjudication in accordance with the Administrative Procedures Act. Defendants present a litany of benefits that asylum applicants are afforded while they await a final adjudication. While these benefits are laudable, they do not absolve Defendants of performing their duty to adjudicate the Form I-589, Application for Asylum and Withholding itself within a timely manner as required by the Administrative Procedures Act.

### B. Interview Scheduling and Efforts to Manage the Asylum Backlog

In response to the assertions made by Defendants regarding the changes in asylum processing systems, it is important to clarify several critical points that underscore the complexities and challenges faced by asylum seekers and the agencies tasked with their processing. Firstly, Defendant's assertion that prior asylum policies encouraged fraudulent filings does not justify the unreasonable delay in adjudicating Plaintiff's asylum application. While historical concerns regarding fraudulent asylum claims prompted regulatory changes, these changes do not absolve USCIS of its statutory obligation to adjudicate asylum applications within a reasonable timeframe. Defendants further reference asylum policies from the 1990s to suggest that delays in adjudication are necessary to deter fraudulent claims. However, Plaintiffs' case does not involve any allegations of fraud, nor have Defendants established that Plaintiff UWIMBABAZI's application lacks merit. Rather than justifying an indefinite delay in adjudicating legitimate applications, past reforms were aimed at improving efficiency while ensuring that asylum seekers with valid claims receive timely protection. The current backlog and delay in Plaintiff UWIMBABAZI's case reflect agency

inefficiencies, not a measured effort to combat fraud.

Moreover, the implementation of the "last in, first out" (LIFO) system by the Immigration and Naturalization Service (INS) in 1995, was indeed a response to a massive backlog of asylum cases, as noted. However, characterizing the applications during that time as uniformly meritless and filed solely for employment authorization overlooks the genuine fears and risks faced by many asylum seekers seeking refuge in the United States. The LIFO system, while aimed at expedient processing, may have inadvertently penalized applicants with legitimate claims by prioritizing newer applications. While USCIS claims that this system discourages meritless filings, it simultaneously traps thousands of legitimate asylum seekers in legal limbo, denying them the timely adjudication they are entitled to under 8 U.S.C. § 1158(d)(5)(A)**.** The backlog that has accumulated under this policy is a direct result of USCIS's shifting priorities, rather than an unavoidable consequence of external factors.

Furthermore, the assertion that the LIFO system was effective solely based on the reduction of numbers fails to account for the quality of decision-making and fairness in adjudications. Expediency should not come at the expense of due process and thorough consideration of each individual's asylum claim. The shift to a "first-in, first-out" (FIFO) system in 2014 was portrayed as a response to operational strain caused by increased asylum claims, particularly from unaccompanied minors and individuals expressing credible fear upon apprehension. While these factors undoubtedly contributed to the strain on resources, the immediate return to a crisis-level backlog following the switch to FIFO suggests that the root causes of inefficiency and delay were not adequately addressed.

It is crucial to recognize that the challenges faced by the Asylum Division and USCIS are multifaceted, influenced by both external factors such as global migration trends and internal

policies and resource allocations. Simply reverting to a FIFO system without addressing underlying systemic issues and resource deficiencies does not constitute a sustainable solution for processing asylum claims fairly and efficiently. Therefore, while acknowledging the operational pressures faced by USCIS, Plaintiff asserts that the rights of asylum seekers must remain paramount in any system of adjudication. Fairness, thoroughness, and adherence to due process principles should guide any reforms to asylum processing systems to ensure that those fleeing persecution are given a meaningful opportunity to seek protection under our laws.

Defendants acknowledge that Congress codified aspirational timelines for adjudicating asylum applications, requiring initial interviews within 45 days and adjudications within 180 days, absent exceptional circumstances. (Defs. Mot. to Dismiss, p. 4). While Defendants point out that Congress did not impose penalties for noncompliance, this does not mean USCIS has unlimited discretion to delay cases indefinitely. *Id*. The statutory framework reflects a clear intent to process applications efficiently, and prolonged delays contradict this purpose. While efforts to reduce fraudulent asylum claims are important, they do not justify the prolonged and unreasonable delay in adjudicating Plaintiff's application. The current backlog is not the result of fraudulent filings but rather of policy shifts like LIFO, which have unfairly disadvantaged applicants who have been waiting the longest. Plaintiff respectfully requests that this Court reject Defendant's justifications for delay and order the timely adjudication of her asylum application.

### C. History of USCIS's Efforts to Address the Asylum Backlog

Defendants have provided a history of USCIS efforts to curtail the backlog in asylum applications. These efforts have included the "last in, first out" (LIFO) scheduling system along with an attempt to process older asylum cases. While these efforts are commendable, it is important to note that a significant number of older cases remain unadjudicated. This cannot be considered

reasonable given Congress's intent to have asylum applications adjudicated within 180 days. 8 U.S.C. § 1158(d)(5)(A)(iii). Simply put, efforts to curtail this backlog may leave Plaintiff UWIMBABAZI waiting for another decade despite USCIS's best efforts. Defendant's argument that a surge in asylum applications has necessitated systemic delays fails to justify the prolonged adjudication of Plaintiff's application.

While an increase in asylum filings may present administrative challenges, it does not absolve USCIS of its obligation to adjudicate cases within a reasonable and timely manner. The persistent backlog is not merely a result of increased applications but is also a consequence of shifting agency priorities and policies that have disproportionately disadvantaged long-waiting applicants like Plaintiff. Defendant asserts that the surge in asylum applications, particularly those involving unaccompanied children, has strained agency resources and led to delays. However, the diversion of asylum officers to other priorities does not justify indefinite delays for those who have already been waiting years for adjudication.

The FIFO scheduling system implemented in 2014 was meant to provide fairness by processing applications in the order they were received. Yet, in 2018, USCIS abandoned this approach in favor of the Last-In-First-Out (LIFO) system, which prioritizes newer applications over older ones. This abrupt policy shift exacerbated delays for applicants like Plaintiff, who filed their applications in good faith under the expectation that they would be processed in a timely manner. Defendant contends that the reimplementation of LIFO was necessary to deter fraudulent filings and reduce the backlog. However, this policy change has unfairly penalized long-waiting applicants by pushing their cases indefinitely to the back of the line while prioritizing newer filings. The backlog growth cited by Defendant is not solely attributable to fraudulent filings but also to inconsistent policies that fail to address the underlying inefficiencies in asylum adjudication.

Furthermore, Defendant's reliance on recent staffing increases and technological advancements does not remedy the harm suffered by Plaintiff due to years of inaction on her case.

While USCIS has adopted new measures to address the backlog, including additional staffing and fee adjustments, these efforts have not translated into meaningful relief for long-waiting applicants. Defendant acknowledges that a significant portion of the backlog consists of cases filed by individuals who may ultimately seek cancellation of removal, yet USCIS's response to this issue has been slow and inadequate. The pilot program introduced in 2023 to address these cases does not resolve the broader issue of delayed adjudications for those with legitimate asylum claims. Ultimately, Defendant's justifications for delay overlook the fundamental principle that asylum seekers, including Plaintiff, have a statutory right to a timely adjudication of their claims.

The shifting policies and inconsistent prioritization have left Plaintiff in prolonged uncertainty, contrary to the intent of **8 U.S.C. § 1158(d)(5)(A)**, which contemplates timely adjudication. Plaintiff respectfully requests that this Court recognize the unreasonable delay in her case and order Defendant to process her application without further unnecessary delay.

### D. The Current State of USCIS's Backlog Management Efforts

Defendant's assertion that the asylum backlog has grown due to an increase in applications in recent years does not excuse the unreasonable delay in adjudicating Plaintiff's asylum application. While the backlog is substantial, it is largely a result of USCIS's shifting policies, inconsistent prioritization, and failure to adequately allocate resources to longstanding cases. The fact that the Houston Asylum Office alone has over 171,700 pending applications (Def's Mot. to Dismiss, p. 8)—many of which have been filed in the last four years—demonstrates that USCIS's policies have disproportionately impacted applicants who have been waiting the longest for adjudication.

Even though Defendants argue that the adoption of LIFO is necessitated by the influx of asylum applications, USCIS has not shown that it has successfully adjudicated the more recently filed asylum applications such that the adoption of LIFO would then allow for the expeditious adjudication of other pending applications. In fact, USCIS has failed to also timely schedule new asylum applicants for their required interviews within a timely manner and complete the final adjudications of their applications, forcing applicants with older-filed applications to now be waiting for extended periods of time- often resulting in a multi-year limbo for these asylum applicants. In many cases, these extended delays result in the continued separation from family members and a delayed opportunity to adjust status. LIFO is not simply the agency's system of prioritizing certain applications over others, it is a system through which, in practice, it creates such unreasonable delays that it prevents thousands of asylum applicants from receiving a final adjudication or being scheduled for an interview.

Defendants highlight their use of a "dual-track" approach, where USCIS continues to prioritize recent filings under the LIFO policy while simultaneously addressing some of the oldest cases. However, this approach remains fundamentally flawed, as it does not guarantee timely adjudication for those who have already waited years for a decision. Moreover, Defendants have not provided any concrete evidence that this "dual-track" system has meaningfully reduced wait times for applicants stuck in the backlog. The lack of transparency regarding how cases are selected for adjudication under this approach raises serious concerns about fairness and due process. While USCIS claims it is now working through the backlog in addition to processing newer cases, the agency's historical failure to prioritize long-waiting applicants undermines any confidence that this system will result in timely relief for Plaintiff. The continued reliance on LIFO has already placed Plaintiff at a severe disadvantage, and without a clear timeline for adjudicating older cases,

USCIS's new measures remain inadequate.

Plaintiff has already suffered years of uncertainty, facing the emotional, financial, and legal burdens of an unresolved asylum claim. The government's responsibility is not merely to manage its backlog but to ensure that those seeking protection are afforded due process and timely adjudication. Defendant's ongoing delays are not justified by its own administrative challenges. Plaintiff therefore respectfully requests that this Court recognize the unreasonable delay in adjudicating her asylum application and compel USCIS to act without further delay.

### E. Plaintiff's Asylum Application

Plaintiff UWIMBABAZI is a citizen of Rwanda. Having lawfully entered the United States on an A-2 nonimmigrant visa she subsequently filed an asylum application on November 30, 2020, seeking protection for herself and her dependent family members. Despite the passage of more than four years and two months, her application remains pending without any indication of when it will be adjudicated. The government's reliance on the fact that Plaintiff has been issued an Employment Authorization Document (EAD) does not mitigate the harm caused by this delay. An EAD is merely a temporary benefit, not a substitute for the security and stability that comes with a grant of asylum status. Plaintiff and her family remain in a precarious state of legal limbo, unable to move forward with their lives while they wait for USCIS to fulfill its duty to adjudicate their claim.

Defendant suggests that asylum applicants may request expedited processing based on exigent circumstances, yet this does not absolve the government of its responsibility to adjudicate applications within a reasonable timeframe. The existence of an exception for extraordinary cases does not negate the fact that the standard process itself has been plagued by excessive and unjustified delays. Furthermore, the burden should not be on Plaintiff to prove that her case

warrants expedited consideration; rather, USCIS should ensure timely adjudication for all applicants, particularly those who have been waiting for years without resolution. Additionally, Defendant points to the possibility of applying for Advance Parole (Defs. Mot. to Dismiss, p. 9) in the event Plaintiff needs to travel outside the United States. However, this is irrelevant to the core issue at hand: Plaintiff's right to a decision on her asylum application within a reasonable period. Advance Parole does nothing to address the uncertainty, stress, and limitations that come with prolonged delays in asylum adjudication and neither does it confer any legal status on Plaintiff.

Plaintiff has acted diligently in pursuing her asylum claim, and her continued wait is not due to any failure on her part but rather the systemic inefficiencies and shifting policies of USCIS. The government cannot rely on discretionary scheduling policies and limited exceptions to justify the broader pattern of delay affecting thousands of asylum seekers. Plaintiff respectfully urges this Court to recognize that the delay in adjudicating her asylum application is unreasonable and to order USCIS to act promptly on her case.

## IV. STANDARD OF REVIEW

### A. 12(b)(1) Motion to Dismiss

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction and can take the form of either a facial or factual attack. See *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (citation omitted); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Leatherman v Tarrant Cty. Narcotics Intelligence & Coordination* Unit, 507 U.S. 163, 164 (1993); *Koutny v. Martin*, 530 F. Supp. 2d 84, (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record'") (internal citations omitted). Furthermore, "[t]he factual allegations in the complaint need not be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible . . ." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Anzevino v. DePasquale*, No. 4:08 CV 2492, 2009 WL 1662498, at *9–10 (N.D. Ohio June 15, 2009) (citing *Twombly*, 550 U.S. at 566). A court need not accept as true "a legal conclusion couched as a factual allegation" nor an inference "unsupported by the facts set out in the complaint." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582, at 582–83 (6th Cir. 2007) (quotation omitted); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasam v. Allain*, 478 U.S. 265, 286 (1986)). In deciding a motion to dismiss pursuant to Rule 12(b)(1), a court is not limited to the allegations of the complaint but may also consider materials outside of the pleadings. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B. 12(b)(6) Motion to Dismiss

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## C. Rule 56(c) Motion for Summary Judgment

Summary judgment is warranted when the moving party establishes that there is no genuine dispute over any material fact and is entitled to judgment as a matter of law. *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (citing FED. R. CIV. P. 56(a)). A fact is considered material if it could influence the outcome of the case, and a factual dispute is deemed genuine if a reasonable jury could return a verdict in favor of the nonmoving party. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021). The moving party bears the initial burden of informing the court of the grounds for its motion and identifying evidence in the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants argue for summary judgment under Federal Rule of Civil Procedure 56(a), asserting that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.

However, Plaintiff contends that a genuine issue of material fact does exist regarding

whether USCIS has *unreasonably delayed* adjudicating her Form I-589 asylum application. The facts and circumstances surrounding the delay, including Plaintiff's compliance with required procedures and the impact of the delay on her legal rights, are crucial considerations that must be evaluated. Plaintiff asserts that there are specific facts demonstrating a genuine issue for trial, emphasizing that mere denials or conclusory allegations without factual support do not suffice. *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021). Furthermore, when assessing whether there is a genuine issue of material fact, the court must consider all facts and reasonable inferences drawn from them in the light most favorable to the non-moving party. Plaintiff opposes Defendants' motion for summary judgment, arguing that genuine issues of material fact exist concerning the reasonableness of the delay in adjudicating her Form I-589 asylum application, particularly under the current administration, which warrants further examination by this honorable Court

## V.    ARGUMENT

The instant action was initiated on October 31, 2024, by Plaintiff UWIMBABAZI, who brought the instant action due to the Defendants failure to adjudicate her Form I-589, Application for Asylum and Withholding of Removal. As of the date the complaint was filed, Plaintiff's Application was pending for over three years and eleven  (over 47 months or 1432 days). (*Id.* ¶¶ 1, 23, 34, and 36). As of the date of this filing, Plaintiff 's Form I-589 has now been pending for over four years and two months (over 50 months or 1525 days) without adjudication or any action by USCIS.

Plaintiff asserts that USCIS has not yet adjudicated her Form I-589 and seeks relief under the Mandamus Act (28 U.S.C. § 1361) and the Administrative Procedure Act (APA) (5 U.S.C. § 701, et seq.), arguing that the delay in processing her asylum application is unreasonable (Compl.,

¶ 35) and requests this Court to compel Defendants to adjudicate her Application within a time certain or immediately. (Compl. Prayer for Relief, ¶¶ 1 and 2).

## A. This Court Does Not Lack Subject-Matter Jurisdiction Over Plaintiff's APA and Mandamus Act Claim

Mandamus litigation may be pursued to compel administrative agencies to act. The Mandamus Act, codified at 28 U.S.C. § 1361, provides that *"[t]he district courts shall have original jurisdiction . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."* In most Mandamus cases involving asylum claims, plaintiffs typically seek either for the agency to finish the adjudication process and make a decision, or to schedule their interview. Plaintiff UWIMBABAZI's request to have her interview scheduled and thereafter receive a final decision on her application is not an attempt by Plaintiff to compel a particular outcome or to gain priority over other asylum applicants who may have been waiting longer than the Plaintiff for a final decision. At the time Plaintiff filed her Form I-589 application, her case would have been a priority even under Defendants' "last-in-first-out" ("LIFO") policy, as was the case for similarly filed applications as Plaintiff UWIMBABAZI's asylum application, however, her application remains unadjudicated.

In order for a federal district court to provide relief under the Mandamus Act, plaintiffs must be able to affirmatively demonstrate that (1) they have a clear right to the relief requested; (2) the defendants have a clear duty to perform the act in question (adjudication of the Application); and (3) no other adequate remedy is available to the plaintiff. *Iddir v. INS,* 301 F.3d 492, 499 (7th Cir. 2002). In the instant case, Plaintiff UWIMBABAZI meets her burden in establishing that she has a clear right to apply for asylum, the Defendants owe her a clear duty to adjudicate her application, and there is no alternative remedy available to the Plaintiff, as she has exhausted her

administrative remedies, and has been forced to pursue litigation against Defendants due to their own failure to act.

Pursuant to 8 USC § 1158(d)(5)(A)(iii), 'except in cases involving exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed. . ." Furthermore, the section would require that asylum applicants be scheduled for their required interviews within 45-days of the Application being filed. Defendants argue that the above would somehow seem to not require the adjudication of asylum applications to be completed within a fixed period of time and even excuse and justify inaction on their part, however, the more appropriate reading of 8 USC § 1158(d)(5)(A)(iii), would be that it anticipates, if not mandates that all applications for asylum be fully adjudicated within the 180-day adjudication window. Defendants "soft policy" does not justify the agency's inaction and unreasonable delays that exceed the 180-day timeframe. (See, *Vietnam Veterans of Am. v. Cent. Intel. Agency,* 811 F.3d 1068, 1081 (9th Cir. 2016).

Courts have consistently found that where the underlying law anticipates the adjudication of an immigration application within the statutorily prescribed 120 days, as is the case for naturalization applications post interview, or 180 days for other immigration benefits, this creates a nondiscretionary duty to act, which is in turn subject to judicial review, contrary to Defendants' misguided belief that they have unfettered discretion and that their inaction is somehow precluded from judicial review. (See *Briseda v. Lehman*, 23-cv-00495-TSH, 6 (N.D. Cal. May. 8, 2024) ("*Yan*, 2023 WL 4053410, at *3"); *Su v. Mayorkas*, - F.Supp.3d -, No. 23-cv-00566-KAW, 2023 WL 7209630, at *4 (N.D. Cal. Oct. 17, 2023) (quoting *Kang v. Jaddou*, 2022 WL 2189634,

at *2 (C.D. Cal. Apr. 25, 2022); see 5 U.S.C. § 706(1) *(a* "reviewing court *shall* . . . compel agency action unlawfully withheld or unreasonably delayed").

Defendants would like this Court to believe that Plaintiff has no basis for bringing a claim under the Mandamus Statute or the APA for unreasonable delay and state that the delay is caused by factors beyond their control- specifically the surge in asylum applications, as a result of which Defendants have been forced to slow or effectively stop the adjudication of Plaintiff's Form I-589. However, courts have held that such considerations alone are not sufficient to deny plaintiff the right to seek Mandamus relief. See *Karimushan v. Chertoff*, WL 2405729, at *6; *Alverez v. Raufer*, CIVIL ACTION NO. 19-3155 (E.D. Pa. Mar. 11, 2020).

Furthermore, the Immigration and Nationality Act (INA)'s prohibition on a private right of action to enforce the timing requirements specified in Section 1158(d)(5)(A) does not divest the Court of subject matter jurisdiction in this case. Importantly, the INA's restriction on private enforcement, as articulated in Section 1158(d)(7), does not preclude judicial review of USCIS's failure to act under the APA. See *Tailawal v. Mayorkas*, No. 2:22-cv-01515-SPG (RAOx), 2022 WL 4493725, at *3 (C.D. Cal. Aug. 18, 2022) (interpreting the INA and concluding that "there is no statutory bar preventing judicial review of USCIS's inaction under the APA"). Section 1158(d)(7) specifically denies a private right of action solely for enforcing certain timing provisions within the INA. See 8 U.S.C. § 1158(d)(7). Moreover, unlike other provisions in the INA that explicitly strip courts of jurisdiction, such as 8 U.S.C. § 1158(a)(3) and 8 U.S.C. § 1158(b)(2)(D), Section 1158(d)(7) lacks comparable language. As noted in *Varol v. Radel*, 420 F.Supp.3d 1089, 1096 (S.D. Cal. 2019), had Congress intended Section 1158(d)(7) to be jurisdiction-stripping, it would have employed the clear language found in those provisions. However, Congress did not do so, and when statutory language allows for varying interpretations,

courts typically favor the presumption of judicial review of administrative actions. See *Kucana v. Holder*, 558 U.S. 233, 251 (2010). Therefore, the Court should conclude that Section 1158(d)(7) does not operate to deprive it of subject matter jurisdiction. See *Varol*, 420 F.Supp.3d at 1096 (affirming court's possession of subject matter jurisdiction while acknowledging absence of private right of action under the INA); *Tailawal*, 2022 WL 4493725, at *3 (same); *Hui Dong v. Cuccinelli*, No. 2:20-cv-10030-CBM (PLAx), 2021 WL 1214512, at *2 (C.D. Cal. Mar. 2, 2021) (similar determination).

**B. Plaintiff Does Not Fail to Allege Sufficient Facts to Support Her Claim for Relief Under the Mandamus Act**

Plaintiff respectfully disagrees with Defendants' assertion that mandamus relief is unavailable in this case. While mandamus is indeed an extraordinary remedy, it is warranted here because USCIS has a clear, non-discretionary duty to adjudicate asylum applications within a reasonable timeframe, and Plaintiff has no adequate alternative remedy to compel agency action.

First, Plaintiff has a clear right to relief. The Immigration and Nationality Act ("INA") and its implementing regulations establish a mandatory framework for processing asylum applications, requiring USCIS to complete the adjudication of such applications within 180 days, absent exceptional circumstances. See 8 U.S.C. § 1158(d)(5)(A)(iii); 8 C.F.R. § 208.7(a)(2). While Defendants argue that no enforceable statutory or regulatory duty exists, courts have recognized that unreasonable agency delay can give rise to a claim for relief under the Mandamus Act and the Administrative Procedure Act ("APA"). See *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (noting that agency action unlawfully withheld or unreasonably delayed may be compelled).

Second, Defendants have a clear duty to act. While USCIS may exercise discretion in certain aspects of the asylum process, it does not have discretion to indefinitely withhold adjudication.

Courts have consistently held that agencies have a duty to act within a reasonable time, and failure to do so constitutes an unlawful withholding of action. See *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984). The sheer length of Plaintiff's delay—more than four years and two month—far exceeds any reasonable timeframe and is not justified by exceptional circumstances.

Third, Plaintiff has no adequate alternative remedy. Defendants argue that Plaintiff could request expedited processing, but such discretionary requests do not provide a meaningful remedy, as USCIS is not required to grant them. The reality is that the backlog and USCIS's internal policies have resulted in an indefinite delay in Plaintiff's case, leaving Plaintiff and her family in legal limbo with no recourse other than this action.

Defendants' reliance on *Ayana v. Jaddou*, 2023 U.S. Dist. LEXIS 229411 (S.D. Tex. Dec. 27, 2023), and other district court cases (*Kizilyildirim v. Daum*, No. 4:23-CV-03287, 2024 WL 1722277 (S.D. Tex. Mar. 29, 2024) denying mandamus relief is misplaced. While some courts have declined to compel agency action in similar cases, others have recognized that prolonged and unreasonable delays may be subject to judicial review. See *Saleh v. Blinken*, 2021 WL 4439185, at *5 (N.D. Cal. Sept. 28, 2021) (finding delay in adjudicating asylum applications actionable under the APA). Each case must be assessed based on its specific facts, and the extreme delay in Plaintiff's case warrants judicial intervention. For these reasons, Plaintiff respectfully requests that this Court grant mandamus relief and compel USCIS to adjudicate her asylum application within a reasonable timeframe.

### C.  Plaintiff UWIMBABAZI Does Not Fail to State a Claim Under the APA

Defendants request that this Court dismiss the instant action for failure to state a claim.

However, Plaintiff UWIMBABAZI has standing and has stated a claim for relief under the Administrative Procedure Act (hereinafter "APA"). Plaintiffs possess the right to sue under the Administrative Procedure Act ("APA") to prompt agency action that has been unreasonably delayed. (See, *De Oliveira v. Barr*, No. 19-CV-1508 (ENV), 2020 WL 1941231, *4–5 (E.D.N.Y. Apr. 22, 2020), where it was recognized that a plaintiff could potentially assert a claim of unreasonable delay regarding their asylum application under the APA). Pursuant to the APA, the Court has the authority to compel the agency to perform its duties by addressing "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). (See, *Tailawal,* 2022 WL 4493725, at *3 (citing *Vietnam Veterans*, 811 F.3d at 1081) ("[A]gency discretion in how the duty is executed does not negate the duty to undertake a 'specific action' under § 706(a)")).

Defendants Motion to Dismiss mistakenly alleges that Plaintiff UWIMBABAZI's complaint should be dismissed for failure to state a claim on the misguided premise that the delay in the instant action is not unreasonable enough or egregious to warrant the current relief. Furthermore, Defendants appear to be under the notion that Plaintiff is requesting the Court to compel Defendants to make a specific determination of her Application and simply just push her to the front of the line. To the contrary, what Plaintiff UWIMBABAZI is requesting is that the Court compel Defendants to adjudicate her Form I-589, Application within a reasonable period of time pursuant to 5 U.S.C. §555(b) as required by law, which has as of the date of this filing, now been pending for over four years and two months (over 50 months or 1525 days). There is no doubt that USCIS is undoubtedly in the best position to determine Plaintiff UWIMBABAZI's eligibility for asylum and accordingly is in the best position to fully vet the applicant, and although the grant of asylum itself is discretionary, the duty to undertake and complete the adjudicative process is most certainly not a discretionary one.

The discretion conferred upon the Agency in determining whether to grant asylum should not be interpreted as the Agency having unfettered discretion and Defendants are entirely mistaken in believing that the Administrative Procedure Act (APA) precludes jurisdiction over an unreasonable delay claim. See 5 U.S.C. § 701(a)(1). Defendants would like us to believe that because the decision to grant or deny asylum is discretionary, the court somehow lacks the jurisdiction to review the Agency's inaction and unreasonable delay in the present case. However, if such a reading of the APA were to be permitted, this would undoubtedly lead to the absurd finding that Defendants could simply "sit" on the application without being required to complete the adjudication of the same within a reasonable period of time, and without any consequences for their continued inaction and unreasonable delay. Such a reading would surely undermine the intent of the APA itself.

USCIS is required to schedule an interview within 45 days of the application being filed and thereafter complete the adjudication of the same within 180 days. (Defs. Motion to Dismiss, p. 10). Although some have construed Congress's 180-day time frame for the adjudication of immigration benefits as non-binding, there remains an expectation that USCIS will adhere to the 180-day adjudication window for processing from the date of the initial filing. 8 U.S.C. §1571(b). The codification of this expectation would support Plaintiff's position that the adjudication of the application itself is not discretionary and is most certainly not at the Defendants mercy and claimed unfettered discretion even if the grant of asylum itself is.

Defendants' Rule 12(b)(6) argument also fails. Plaintiffs' well-pleaded complaint raises a plausible claim under the APA for unreasonable delay. Furthermore, Congress has authorized judicial intervention in cases involving a federal agency's failure to act and unreasonable delay. The Court is authorized to "compel agency action unlawfully withheld or unreasonably delayed."

5 U.S.C. § 706(1), and therefore the Court should consider the Plaintiff's allegations as true and construe the facts in favor of the Plaintiff finding that Plaintiff has met the threshold in bringing a plausible claim under the APA based on Defendants failure to adjudicate.

Many plaintiffs will suffer irreparable harm as a direct consequence of USCIS's policy of prioritizing the most recently filed asylum applications for asylum interview scheduling over older filed applications (last in, first out- "LIFO"). *See* USCIS, *USCIS to Take Action to Address Asylum Backlog*, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (Jan. 31, 2018). USCIS has for a long time maintained that the adoption of LIFO is necessitated by the influx of asylum applications and the ever increasing backlog of adjudications, USCIS has failed to also timely schedule new asylum applicants for their required interviews and complete the final adjudications of their applications, forcing applicants with older-filed applications to be waiting for extended periods of time- often resulting in a multi-year limbo for these asylum applicants. In many cases, this extended delays results in the continued separation from family members and a delayed opportunity to adjust status. LIFO is not simply the agency's system of prioritizing certain applications over others, it is a system through which, in practice, it creates such unreasonable delays that it prevents thousands of asylum applicants from receiving a final adjudication or being scheduled for an interview.

Accordingly, the Court should not dismiss Plaintiff UWIMBABAZI's complaint as she has brought a sufficient claim for relief.

### D. The Delay in Adjudicating Plaintiff UWIMBABAZI's Application is Unreasonable

Defendants would like this Court to dismiss Plaintiff UWIMBABAZI's complaint on the misguided assumption that a 44 month delay, as of the date she filed her Form I-589, Application

for Asylum and Withholding of Removal, to the date she filed her complaint is somehow not unreasonable. However, Defendants have conveniently excluded reference to the fact that Plaintiff UWIMBABAZI's case remains unadjudicated and, has now been pending for over 50 months, (over four years and two months or 1525 days) as of the date of this filing and will likely continue to remain unadjudicated for many months or even years without judicial intervention. (*De Oliveira v. Barr*, No. 19-1508, 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020) where delays over four years would be considered unreasonable). "The standard by which the court reviews agency action under the Mandamus Act, 28 U.S.C. §1361, is the same standard applied to claims under § 706(1) of the APA." *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *8 (D.D.C. March 21 2021). Specifically, whether delays in agency adjudication are reasonable are judged by the factors under the *Oil* factors. *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998).

The Defendants argue that the delay in adjudicating Plaintiff UWIMBABAZI's asylum application does not constitute unreasonable delay. However, a closer examination reveals that Plaintiff UWIMBABAZI's case warrants judicial intervention.

The Defendants emphasize that duration alone does not establish unreasonable delay. While precedent acknowledges that mere passage of time is not determinative, it fails to discount the significance of extended and ongoing delays such as the one experienced by Plaintiff UWIMBABAZI. This prolonged delay has real and substantial consequences for individuals like Plaintiff UWIMBABAZI, impacting their ability to plan their lives and potentially subjecting them to prolonged anxiety and insecurity, and increased risk of detention and deportation under the current administration, without proper legal status.

The Defendants contend that USCIS exercises discretion under the INA to manage its

asylum workload and argues that statutory provisions allow flexibility in processing timelines. However, while USCIS may have adopted administrative procedures such as LIFO scheduling to manage its caseload, these procedures cannot serve as a blanket justification for indefinitely delayed adjudications. The INA's aspirational timelines for adjudications reflect Congress's intent to ensure timely processing, albeit without strict private enforcement rights. Nevertheless, this does not absolve USCIS from adhering to a standard of reasonableness in administering its duties, especially concerning the fundamental rights of asylum seekers.

The Defendants further highlight protective measures such as employment authorization and protection from removal during the pendency of asylum applications. (Defs. Mot. to Dismiss, generally). While these protections mitigate some immediate hardships, they do not negate the profound impact of prolonged uncertainty on individuals awaiting asylum decisions. The emotional, financial, and social toll on asylum applicants and their families during extended waits cannot be disregarded merely by the availability of interim benefits.

The Defendants argue that granting relief to Plaintiff UWIMBABAZI would disrupt USCIS's prioritization of resources and potentially disadvantage other applicants. However, prioritization cannot justify unreasonable delay that undermines the fairness and efficacy of the asylum process. Courts have recognized that administrative inconvenience must be balanced against the rights of individuals who face substantial harm from delayed decisions, particularly when USCIS has not demonstrated proactive steps to address systemic delays beyond procedural adjustments.

While USCIS faces operational challenges and resource constraints, these factors do not justify the dismissal of Plaintiff UWIMBABAZI's claim of unreasonable delay under Rule 12(b)(6). Plaintiff UWIMBABAZI has plausibly alleged an unreasonable delay that warrants

judicial review. Upholding fairness and due process in asylum adjudications requires a balanced approach that respects administrative discretion while safeguarding the rights of vulnerable individuals awaiting asylum determinations. Plaintiff challenges the Defendant's position by emphasizing the real-world impacts of prolonged delays on asylum applicants and asserting that USCIS's discretionary measures do not absolve it from adhering to a standard of reasonableness in its administrative actions.

## CONCLUSION

For the foregoing reasons, Plaintiff humbly requests that the Court deny Defendants Motion to Dismiss and grant her the relief she is seeking through the instant action.

Date: February 3, 2025                                      Respectfully submitted,


 /s/ Sadaf F. Ahmed
**Sadaf F. Ahmed, Esq.**
**JEELANI LAW FIRM, PLC**
**3701 W Algonquin Rd Suite 630**
**Rolling Meadows, IL 60008**
**sadaf@jeelani-law.com**
**Phone:(312) 767-9030**
**Fax:(312) 767-9030**
***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that on February 3, 2025, the foregoing was filed and served on counsel of

record through the Court's CM/ECF system.

_____
Sadaf F. Ahmed, Esq.
*Counsel for Plaintiffs*